# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ORLANDO HEALTH, INC.,

            Plaintiff,

v.                                                          Case No:   6:24-cv-693-JA-LHP

HKS ARCHITECTS, INC.,

            Defendant
/Third Party Plaintiff,

BBM STRUCTURAL ENGINEERS,
INC.,

            Third Party
            Defendant

_____

## ORDER

This cause came on for consideration without oral argument on the following

motion filed herein:

| | |
|---|---|
| **MOTION:** | **ORLANDO HEALTH, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM HKS ARCHITECTS, INC., AND MOTION FOR CONTEMPT AND REQUEST FOR ADDITIONAL BRIEFING (Doc. No. 51)** |
| **FILED:** | **November 11, 2024** |

**THEREON** it is **ORDERED** that the motion is **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

On October 23, 2024, Plaintiff Orlando Health, Inc. ("Orlando Health") moved to compel Defendant HKS Architects, Inc. ("HKS") to produce documents responsive to Orlando Health's Request for Production ("RFPs").   Doc. No. 41.   In sum, Orlando Health argued that despite affording HKS several extensions of time, HKS wholly failed to produce any responsive documents to the RFPs, and Orlando Health therefore requested an order of compliance as well as an award of fees.   *Id.*   The motion sought production without any limitations, there was no mention of production related to specific files or depositories.   *Id.*

HKS submitted a timely response to the motion to compel.   Doc. No. 42. HKS did not contest any of Orlando Health's assertions, admitted that it had not produced responsive documents, and did not raise or address any objections to the RFPs.   *Id.*[1]   Rather, all HKS stated by way of explanation for its failure to comply was that "Counsel for HKS learned that the Project was nearing completion, with the Project set to receive governmental inspections in September-October 2024.

---

[1] As discussed in more detail below, HKS also did not raise any objections in its response to the RFPs, instead responding to each request with the same statement:   "HKS will produce documents responsive to this request in accordance with the ESI Protocol agreed upon by the parties."   Doc. No. 51-5.

HKS is now able to devote the resources necessary to produce the Project files. . . . While there has been some unforeseen delay in producing the responsive electronically stored Project files while the Project was highly active during the completion phase, HKS is now in a position to promptly make the production of electronically stored information." *Id.*, ¶¶ 5-6, 8. HKS did not define "the Project," did not mention any agreements or understandings with Orlando Health to limit its document production in any manner, did not argue that production should be limited in any manner, and did not raise any concerns with respect to an ESI Protocol for electronic production. Doc. No. 42. Rather, HKS in essence stated that it was too busy to produce discovery but would do so now. *Id.*

On October 30, 2024, the Court found HKS's admitted failure to timely comply with discovery to be without justification and granted Orlando Health's motion to compel *in its entirety*. Doc. No. 44. Specifically, the Court directed HKS to produce, on or before November 13, 2024, "**all** documents in its current possession, custody, or control responsive to Orlando Health's First Request for Production." *Id.*, at 4 (emphasis in original). The Court further found all objections other than privilege waived, and levied sanctions against HKS in the form of Orlando Health's reasonable fees and expenses incurred in filing the motion to compel. *Id.*, at 4-5. The Court's Order was clear and unambiguous, it did not limit production to any specific files, repositories, categories, or forms of documents

(electronic or otherwise) and did not condition production on the parties negotiating and executing an ESI Protocol.  *Id.*  HKS was to simply produce ***all documents***.  *Id.*  The Order further stated that failure to comply may result in further sanctions pursuant to Fed. R. Civ. P. 37(b).  *Id.*, at 5.  To date, HKS has not moved for clarification or reconsideration of the October 30, 2024 Order.

## II.  THE PRESENT MOTION TO COMPEL AND FOR SANCTIONS

Instead, it appears that HKS misread (at best) or deliberately ignored (at worst) the Court's October 30, 2024 Order, as on November 18, 2024, Orlando Health filed the above-styled motion to compel and for contempt against HKS. Doc. No. 51.  Orlando Health contends that HKS did not comply with the Court's October 30, 2024 Order in that HKS has failed to produce "**all** documents in its current possession, custody, or control responsive to Orlando Health's First Request for Production," and that HKS has failed to execute a previously agreed upon ESI Protocol.  Doc. No. 51.  Rather, HKS unilaterally decided to limit production to documents contained within a "project depository," which contained non-custodial project documents and a handful of random emails saved to PDF.  *Id.*  Orlando Health further argued that the parties had agreed upon an ESI Protocol which would govern production of custodial emails, to include HKS searching its email files based on agreed to search terms, but that HKS unilaterally decided to deviate from the ESI Protocol so that it now only applies to the files in the "project

depository." *Id.*    As relief, Orlando Health asks that the Court order HKS to sign the previously agreed-upon ESI Protocol, to produce all communications in accordance with that ESI Protocol, award Orlando Health its fees under Fed. R. Civ. P. 37(a)(5), and hold HKS in contempt until it is in full compliance. *Id.*, at 3. *See also* Doc. No. 54, at 8-9.

In authorized supplemental briefing, Orlando Health detailed its attempts to negotiate an ESI Protocol with HKS, which occurred over several months, and which ultimately resulted in both Orlando Health and HKS agreeing to an ESI Protocol that applied to the production of HKS emails. Doc. No. 54, at 1-4. However, despite agreeing to the ESI Protocol and agreeing to produce documents in accordance with the ESI Protocol, HKS has refused to sign the ESI Protocol to date, and has only made a limited production from its project files. *Id.*, at 1-6. Orlando Health further argues that glaring gaps exist in the production, and lists several examples of missing documents that relate to liability and damages. *Id.*, at 7. Orlando Health has also submitted email correspondence between its counsel and HKS's counsel, which clearly show that HKS's counsel unequivocally agreed to the ESI Protocol as limited to emails – and not limited to any "project depository" – but later unilaterally decided to limit its production and modify the ESI Protocol. Doc. Nos. 51-1 through 51-4.

In response, HKS contends that on or about July 30, 2024, HKS and Orlando Health agreed to limit production in this case, including any ESI Protocol, to HKS's "Project File," and that HKS has produced all responsive documents in its "Project File" in accordance with that agreement.  Doc. No. 56.  HKS further argues that it never "receded from the July 30, 2024 discussion on the acceptability of the production of HKS's Project File, or that its production would be served without the requisite proportionality," and that HKS cannot be forced to enter into any binding enforceable agreement to the contrary.  *Id.*, at 6-7.  As such, HKS argues that it has produced documents proportionate to the needs of the case, it is not in contempt and Orlando Health's motion (Doc. No. 51) should be denied.  *Id.*, at 1-4, 6.  HKS also argues that to the extent any gaps in its production may exist, Orlando Health has not attempted to confer with HKS to resolve any issues.  *Id.*, at 4-5.

In support of its argument, HKS submits two emails both dated July 30, 2024 between its counsel (Attorney Michael A. Hornreich) and Orlando Health's counsel (Attorney Jeremy Springhart).  Doc. No. 56-1.  The first email, from Attorney Springhart, notes that Orlando Health is "less than thrilled" with HKS's project file production and seeks to coordinate a call to facilitate production.  *Id.*, at 1-2. Attorney Hornreich's response to Attorney Springhart, in its entirety, is as follows:

I would like to hear the specifics of what they are less than thrilled about. It's the project file as maintained and exported to us. If they are looking for something they think must exist, we would be glad to confirm whether it exists or not, or for some reasons did not make it into the project file. We stand by ready to cooperate fully. An amorphous feeling of being less than thrilled is not enough to broadly reject the most common and proportionate approach.

Yours truly, Mike.

Doc. No. 56-1, at 1.

### III.    ADDITIONAL BRIEFING

Upon review of these filings, the Court ordered additional briefing to address several targeted issues. Doc. No. 59. In particular, the Court requested that both parties address HKS's assertions that during a July 30, 2024 email exchange and earlier conversation, the parties agreed to a modification of the ESI Protocol and that the scope of production should be limited to a "Project Depository" or "Project File." *Id.*, at 3, 4. The Court also directed HKS to define with specificity the terms "Project Depository," and "Project File." *Id.*

With respect to HKS's assertions regarding proportionality and any modified ESI Protocol, the Court directed HKS to explain, with citation to relevant legal authority, whether it could raise such arguments given that: (1) HKS previously agreed to the ESI Protocol in an August 30, 2024 unopposed motion filed with the Court (Doc. No. 29); (2) HKS previously agreed to the ESI Protocol in its email correspondence with Orlando Health (Doc. Nos. 41-3; 51-1; 51-2; 51-3; 51-4); (3) HKS

waived all objections, including any proportionality objections, when it failed to assert such objections in its responses to the RFPs (Doc. No. 51-5), and in its response to Orlando Health's first motion to compel (Doc. Nos. 41-42); and (4) the Court's October 30, 2024 Order did not limit production and found all objections waived (Doc. No. 44).   The Court also directed HKS to explain why Orlando Health should be required to engage in further conferrals given the clear and unambiguous language of the October 30, 2024 Order.   The parties timely-filed their additional briefing, (Doc. Nos. 63, 64) and the Court addresses each specific topic below.

A.   *Defined Terms*

HKS explains that the terms "Project Depository," "Project File," and "Project Folder" all have the same meaning, and refer to a TonicDM email file storage system, whereby HKS utilizes cloud storage for all emails related to a specific project.   Doc. No. 63, at 1-2.   HKS further explains that this is how it maintains and stores emails in the regular course of its business.   *Id.*, at 2-3.   Orlando Health does not address this issue in its reply brief.   Doc. No. 64.

B.   *July 30, 2024 Agreement*

With respect to HKS's apparent argument that an agreement had been reached with Orlando Health on or about July 30, 2024, HKS now states that it is counsel's "understanding" that an agreement was reached in a July 30, 2024 telephone conversation, but HKS clarifies that the July 30, 2024 email relates to a

different case in which HKS produced its Project File, and that HKS believed that an "understanding" had been reached that HKS would produce the same in this case. *Id.* HKS further states that its "belief was based on proportionality and the expectation of cooperation as to any issues that might arise," and that it is Orlando Health's position that unilaterally changed. *Id.*, at 4. HKS again refers to the email chain quoted above in support. *Id.*, at 9; *see also* Doc. No. 56-1.

In its reply brief, Orlando Health also asserts that the July 30, 2024 email exchange relates to a different case where HKS produced Project Depository files. Doc. No. 64, at 2-3. However, Orlando Health strongly asserts that it never agreed to such limited production in this case. *Id.* Orlando Health attaches the full email chain, which does not reflect any agreement *in this case* to limit production to a Project Depository. *Id.*, *see also* Doc. No. 64-2.

C.    *Modified ESI Protocol*

With regard to the ESI Protocol, HKS asserts that it never agreed to the ESI Protocol in full, but that its expectation was always that the ESI Protocol would be limited to the Project File, and/or that an ESI Protocol would not be necessary. Doc. No. 63, at 4. HKS further states that it expected that any issues regarding production and the ESI Protocol "would be addressed expeditiously and cooperatively," and that its failure to provide a proposed modified ESI Protocol was

merely "a function of attempting to cooperatively resolve any issues after initial production, rather than merely exchanging modified drafts." *Id.*

Orlando Health strongly disagrees with HKS's position, arguing that it flies in the face of months of negotiations between the parties, which culminated in emails in which HKS agreed to the prior ESI Protocol. Doc. No. 64, at 3-5. Orlando Health also points to the August 30, 2024 unopposed motion seeking Court approval of the prior ESI Protocol, to which HKS never raised objection. *Id.*; *see also* Doc. No. 64-3. Rather, Orlando Health contends that the parties agreed to bifurcate the ESI Protocol process, through which an ESI Protocol would be executed, and HKS would first produce email communications, and any further production would be negotiated at a later point. Doc. No. 64, at 3. HKS however, unilaterally changed its position. *Id.*

D.    *Proportionality Objections*

HKS argues that its production of the Project File in this case, which is maintained in HKS's ordinary course of business "fulfilled the requirement for production of all responsive non-privileged documents." Doc. No. 63, at 5. And with respect to whether any objections as to proportionality have been waived, HKS argues that proportionality is not just an objection "but is inherent in the production of documents including ESI." *Id.*, at 5-6. HKS references Fed. R. Civ. P. 26(b)(1) and the advisory committee notes to that rule, but otherwise provides no legal

authority suggesting that a party may raise an issue regarding proportionality *after* the party is given multiple opportunities to address proportionality and remains mute, and *after* a Court order compelling production has issued finding all objections waived and the party is now facing sanctions for failure to comply.  *Id.*

As expected, Orlando Health disagrees with HKS's position, and argues that HKS cannot now impose a proportionality requirement after the Court's October 30, 2024 Order directing production of all documents, without limitation.   Doc. No. 64, at 5.   Rather, Orlando Health contends that HKS is hiding responsive documents, and even if proportionality had not been waived, HKS has not explained what steps it has taken to ensure that its production is indeed proportional to the needs of this case.  *Id.*, at 5-6.

E.    *Continuing Conferral*

Last, HKS argues that Orlando Health should be required to confer about any gaps in the production to date, as required by Local Rule 3.01(g).   Doc. No. 63, at 7.   Orlando Health does not address this issue other than arguing that by pointing to the conferral obligation, HKS is reaffirming Orlando Health's "legitimate fears first raised in the July 30 emails – that HKS's production would be deficient and that critical documents would be missing."   Doc. No. 64, at 5.

### III.    ANALYSIS

Orlando Health seeks to compel production and for sanctions under Federal Rule of Civil Procedure 37.    Because the production Orlando Health seeks relates to that ordered by the Court on October 30, 2024, *see* Doc. Nos. 44, 51, Federal Rule of Civil Procedure 37(b) governs.

"Rule 37 authorizes a district court to impose such sanctions 'as are just' against a party that violates an order compelling discovery. . . .    District courts enjoy substantial discretion in deciding whether and how to impose sanctions under Rule 37." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) (first citing Fed. R. Civ. P. 37(b)(2), then citing *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir.), *cert. denied*, 510 U.S. 863 (1993)).    "Rule 37(b) authorizes a panoply of sanctions for a party's failure to comply with a discovery order." *Wyndham Vacation Ownership, Inc., v. Clapp Bus. Law, LLC*, No. 6:19-cv-756-Orl-41GJK, 2020 WL 3266059, at *2 (M.D. Fla. Apr. 2, 2020) (quotation marks and citation omitted).    Those include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Rule 37(b)(2)(C) further provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Strict adherence to Rule 37 is necessary "to prevent parties from flouting discovery orders." *Reed v. Fulton Cty. Gov't*, 170 F. App'x 674, 675 (11th Cir. 2006) (per curiam) (internal quotation marks and citation omitted).[2] "[S]anctions are imposed [under Rule 37] not only to prevent unfair prejudice to the litigants but also to ensure the integrity of the discovery process." *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982) (per curiam). However, the extent of the

_____

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

sanctions must be "'reasonable' in light of the circumstances." *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1453 (11th Cir. 1985).

In this case, the Court's October 30, 2024 Order was clear and unambiguous, it required production of <u>**all**</u> documents, without limitation to any specific Project File or Project Depository.   Doc. No. 44, at 4.   HKS never sought clarification or reconsideration of that Order.   Thus, it would appear that HKS is in violation of the Court's Order and that sanctions are warranted absent substantial justification. Upon review, the Court finds no such justification here.

Rather, the Court finds unpersuasive HKS's arguments both in its response and additional briefing regarding the proportionality of its production to date. Doc. Nos. 56, 63.   First, although HKS asserts a contrary "understanding," HKS fails to demonstrate that the parties ever agreed to limit production *in this case* to the Project File or Project Depository, and the July 30, 2024 email on which HKS relies fails to support this argument.   Doc. No. 63; Doc. No. 64-2.   And even if the parties had so agreed, the time for HKS to raise that issue has long passed.   HKS should have – and could have – identified such a limitation in its responses to Orlando Health's RFPS.   HKS should have – and could have – explained any such agreement in response to Orlando Health's motion to compel.   But HKS did not, instead merely stating that it had been too busy to engage in discovery but would do so now.   HKS cannot remain silent, chose to produce what it wishes when faced

with a Court Order compelling production, and only after sanctions are requested then raise such arguments. *See, e.g., Treminio v. Crowley Mar. Corp.*, No. 3:22-cv-174-CRK-PDB, 2023 WL 8615135, at *3-4 (M.D. Fla. Dec. 13, 2023) (finding objections on the basis of relevancy and proportionality waived when they were not raised in response to requests for production); *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-cv-366-PGB-LHP, 2023 WL 1069783, at *4 (M.D. Fla. Jan. 27, 2023) (finding objection based on relevancy waived because it was not raised in response to interrogatories); *Elite Mitigation Servs., LLC v. Westchester Surplus Lines Ins. Co.*, No. 5:19-cv-381-TKW/MJF, 2020 WL 6122068, at *4 (N.D. Fla. Apr. 6, 2020) (finding waived objections that the requests for production "are exceedingly broad, not sufficiently limited in scope and not proportional to needs of this litigation" where plaintiff did not raise these objections in its response to the production); *Abruscato v. GEICO Gen. Ins. Co.*, No. 3:13-cv-962-J-39JBT, 2014 WL 12617735, at *1 (M.D. Fla. May 7, 2014) (citation omitted) ("In general, objections not made in responses to discovery requests are normally waived."); *see also Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 690 (S.D. Fla. 2011) (arguments and objections not raised in initial response to motion to compel are waived); *McKenzie v. United States Tennis Ass'n Inc.*, No. 6:22-cv-615-PGB-LHP, 2023 WL 6463475, at *2, n.7 (M.D. Fla. Oct. 4, 2023) (argument

raised for first time in supplemental briefing related to a motion to compel deemed waived as it was not raised in the initial motion).[3]

The Court also finds HKS's assertions that it never agreed to an ESI Protocol, and that it did not provide a modified ESI Protocol because it was instead engaging in cooperative and expeditious discovery, to be unpersuasive and bordering on disingenuous.  Such assertions are readily disproved by the emails and filings to date, which show:   (1) HKS's delay of over more than five (5) months in making any production and the lack of any justification by HKS other than it was too busy; (2) HKS's counsel's November 15, 2024 letter to Orlando Health which clearly states that an "ESI protocol is also attached;" (3) the August 30, 2024 unopposed motion to enter an order regarding the prior ESI Protocol which states that HKS agreed to the ESI Protocol and for which HKS never raised objection (Doc. No. 29); (4) the emails between counsel in which HKS's counsel clearly agrees to the prior ESI

_____

[3] The decisions HKS cites in support are not persuasive.  All of the decisions referenced, while discussing production of documents held in the ordinary course of business, address either initial motions to compel or motions to implement an ESI protocol; none address a motion for sanctions for failure to comply with a court order that already directed production.  *See* Doc. No. 63, at 3, 5, 6, 7.  Simply put, the time to raise any proportionality or undue burden arguments (to the extent HKS is attempting to raise that objection as well) has long passed, and HKS has provided no legal authority permitting it to resurrect such objections now.

Protocol (Doc. Nos. 51-1 through 51-4); and (5) HKS's failure to raise any of these issues in response to the first motion to compel.   Doc. No. 42.

Simply put, HKS chose to pursue a litigation strategy of changing its mind with respect to an ESI Protocol and unilaterally limiting production to its Project File, in direct contravention to the Court's October 30, 2024 Order and other prior filings.   Doc. Nos. 29, 44.   HKS has not provided any evidence or legal authority to support its position, or to support a finding that it should not be sanctioned for violating the Court's Order.   Accordingly, Orlando Health's motion to compel and for sanctions (Doc. No. 51) will be granted, at least in part.

The question now becomes what sanction is appropriate.   The extent of the sanctions must be "'reasonable' in light of the circumstances."   *Carlucci*, 775 F.2d at 1453.   Orlando Health seeks attorneys' fees, an order compelling HKS to enter into the ESI Protocol and to produce responsive documents, and to hold HKS in contempt until HKS responds.   Doc. No. 51, at 4.   Upon review, the Court does not find that the severe sanction of contempt is warranted – at least not at this time. While HKS appears to have been delaying production, it has made some production to date, its counsel clearly is in regular communication with Orlando Health's counsel, Orlando Health does not dispute that it has not further conferred with respect to the identified gaps in production (*see* Doc. No. 64, at 5), and there is no evidence or argument that HKS is otherwise refusing to engage in litigation in a

civil and cooperative manner.   Rather, in light of the circumstances, including HKS's counsel's continued assertions that it will work cooperatively with Orlando Health, the Court finds that lesser sanctions are reasonable at this time.   However, HKS is advised in the strongest terms possible that future failures to comply will place the entire panoply of available sanctions in play.   *See, e.g., Costa v. Datapro, Inc.*, No. 10-23172, 2011 WL 7318760, at *6 (S.D. Fla. Aug. 5. 2011) ("[D]istrict courts will only impose the severe sanctions listed in Rule 37(b) upon finding (1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders." (citing *Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 571 (S.D. Fla. 2001); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 132 (S.D. Fla. 1987))); *Deltona Transformer Corp. v. NOCO Co.*, No. 6:19-cv-308-Orl-41LRH, 2020 WL 11420589, at *10 (M.D. Fla. Oct. 30, 2020) (where defendant violated court's order on motion to compel by failing to produce a document, court found sanction of civil contempt not proportional to the offense and instead directed production and awarded reasonable fees and expenses).

## V.    CONCLUSION

Accordingly, Orlando Health, Inc.'s Motion to Compel Production of Documents from HKS Architects, Inc., and Motion for Contempt (Doc. No. 51) is

**GRANTED IN PART AND DENIED IN PART.**   The motion is **GRANTED** as follows:

(1)    In an effort to avoid further delays in the discovery process, the Court will enter as a Consent Order the ESI Protocol submitted as Exhibit A to Orlando Health's Unopposed Motion to Enter Proposed Consent Order Regarding Electronically Stored Information ("ESI") Protocol.   Doc. No. 29-1.   The Court will enter the Consent Order contemporaneously with this Order, and the parties are **DIRECTED to IMMEDIATELY comply** with the Consent Order in full, to include any required conferrals regarding search terms and custodians for email searches.

(2)    Within **twenty-one (21) days** from the date of this Order, HKS shall produce **all** documents in its current possession, custody, or control responsive to Orlando Health's First Request for Production (Doc. No. 41-1), as previously Ordered in the Court's October 30, 2024 Order.   Doc. No. 44.   All objections – including any proportionality objections or arguments – are **OVERRULED.** However, HKS may raise any objections related to privilege, which must be properly supported by a privilege log served on Orlando Health by this same deadline.   *See Standing Order Regarding Privilege Logs*, Case No. 6:19-mc-32-Orl-LRH, Doc. No. 1 (M.D. Fla. June 17, 2019), *available at* https://www.flmd.uscourts.gov/standing-order-judge-hoffman-price-regarding-privilege-logs.   **Given the length of time that this discovery has been**

**outstanding, and that this is the second Order directing production, this deadline will not be further extended.**

(3)    Within **twenty-one (21) days** of the date of this Order, Orlando Health and HKS shall meet and confer in good faith to determine an amount of reasonable fees and expenses that should be awarded to Orlando Health for the filing of the present motion.   Such fees shall include those attributable to the filing of the motion, supplemental briefing, and the Court-ordered additional briefing.   Doc. Nos. 51, 54, 64.   By this same deadline, the parties shall file a joint notice of the amount agreed upon.   If the parties are unable to reach an agreement by that time, within **seven (7) days** thereafter, Orlando Health shall file a motion, supported by appropriate documentation, for reasonable fees and expenses incurred in filing the present motion.

(4)    In all other respects, Orlando Health' motion (Doc. No. 51) is **DENIED**. **However, HKS is again advised in the strongest terms possible that further failures to comply with Court Orders may subject HKS to additional sanctions under Federal Rules of Civil Procedure 16, 37(b), and the Court's inherent authority.**

**DONE** and **ORDERED** in Orlando, Florida on December 23, 2024.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties