**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ORLANDO HEALTH, INC.,

    Plaintiff,

v.                                Case No. 6:24-cv-693-JA-LHP

HKS ARCHITECTS, INC.,

    Defendant.

_____

HKS ARCHITECTS, INC.,

    Third-Party Plaintiff,

v.

BBM STRUCTURAL
ENGINEERS, INC.,

    Third-Party Defendant.

_____

## ORDER

This is a breach of contract case. In preparation for the construction of a hospital tower and related service departments, Plaintiff Orlando Health, Inc. (the Hospital) contracted HKS Architects, Inc. (the Architect) to be responsible for architectural and engineering services pertaining to the design and construction of the project. The Architect then subcontracted BBM Structural Engineers, Inc. (the Engineer) to provide the structural engineering services.

During construction, structural design defects allegedly were discovered.

These defects and errors in construction administration allegedly led to faulty construction, immediately requiring costly repairs.  The Hospital maintains that the design defects included: (1) the failure to include in the Engineer's drawings "top bars in a 12" thick concrete slab, multiple levels," (Doc. 127-3 at 5); (2) a "major structural miscalculation at a cantilevered condition" necessitating the redesign of a "structural column and cantilevered condition," (Doc. 60-1 ¶¶ 24–26); and (3) deficiently designed structural beams, (Doc. 145 at 6).

The Hospital filed this lawsuit to recover the cost of these repairs from the Architect.  The Architect in turn filed a third-party complaint against the Engineer, alleging that the Engineer was responsible for the alleged design defects.  The case is set for a bench trial next month.

In preparation for trial, the Engineer filed a "*Daubert*[1] Motion in Limine" (Doc. 138) seeking to exclude testimony offered by two of the Hospital's opinion witnesses—Brian P. Herbert, a licensed architect, and Webb Wright, a licensed

---

[1] Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony and "compels" the Court "to perform [a] critical 'gatekeeping' function." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)); *see* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.").

engineer.  The Hospital opposes the motion for reasons set forth in its response (Doc. 145).  The motion is unpersuasive and must be denied.

*Herbert*

Herbert is a degreed architect and a member of the American Institute of Architects with thirty-five years' experience in Florida.  The Engineer does not challenge Herbert's opinion testimony as to the Architect's standard of care. The Engineer does, however, object to Herbert's anticipated testimony regarding the standard of care for structural engineers.  The parties have not deposed Herbert, and the Engineer relies entirely on his expert report.  The report states:

> Both the Architect and [the Engineer] did not uphold the standard of care required during the design and construction administration phases of the [hospital] Project.  Specific deficiencies include noncompliance with applicable State laws and statutes, failure to meet the requirements of the Florida Building Code (FBC), and the production of incomplete and uncoordinated construction documents, contrary to the expectations established by both the FBC and the American Institute of Architects.  Furthermore, there was a failure to properly review and ensure the coordination and completeness of all design elements, as mandated by the professional practice standards outlined in the NCARB Architectural Practice Guidelines.

(Doc. 138-1 at 16).

The Engineer's argument to exclude such testimony is that because Herbert is an architect—and not a structural engineer—he is categorically unqualified to testify regarding the standard of care for structural engineers. As authority for this argument, the Engineer cites *United States ex rel. J&A*

3

*Mech., Inc. v. Wimberly Allison Tong & Goo*, No. 6:05-cv-1207, 2006 WL 3388450 (M.D. Fla. Nov. 21, 2006), but that case is not helpful here. In *J&A*, the court found that the construction-manager witness was "not an architect and therefore [was] not qualified to offer expert testimony regarding the standard of care for a supervising architect." *Id.* at *3. The experience, training, and roles of the construction manager were not similar to, or overlapping, those of the supervising architect.

By contrast, the functions of an architect and structural engineer in this case are similar and do overlap. The Architect's contract with the Hospital required that it provide engineering services pertaining to the design and construction of the project. To meet this contractual obligation, the Architect subcontracted the Engineer.

Although Herbert is an architect, he "is not necessarily unqualified because [his] experience does not precisely match the matter at hand." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). While Florida law recognizes that the professions of architect and engineer are distinct, it also recognizes that an architect may perform engineering services incidental to his architectural practice and a structural engineer may perform architectural services incidental to his engineering practice. *See* § 471.003(3), Fla. Stat.

4

Herbert's opinion discusses the Engineer's and the Architect's coordination on construction documents and the lack of clarity in the Engineer's construction documents. (*See, e.g.*, Doc. 138-1 at 4, 9). Furthermore, Herbert formed his opinion without "perform[ing] any design professional service that 'required special knowledge of the mathematical, physical, and engineering sciences.'" (Doc. 145 at 10–11 & n.1). For example, when Herbert mentions a "structural calculation error," he makes clear that his opinion is based on his review of the engineering expert's peer-review-services report. (Doc. 138-1 at 12).

The Court is satisfied that Herbert's knowledge, skill, experience, training, and education regarding the duties of construction professionals at issue qualify him to give his professional opinion regarding the standard of care applicable to the Architect and Engineer in this case pertaining to design defects and construction administration.

*Wright*

The Engineer also seeks to exclude or limit Wright's opinion testimony. Wright is a degreed and experienced engineer, and there is no objection to his qualifications to provide opinion testimony in this case. The Engineer objects that Wright's methodology in reaching his opinion was flawed and that his opinion thus is not reliable. The Engineer maintains that the standard of care established by the terms of the contract between the Hospital and the Architect

is controlling. And because Wright is unfamiliar with the contract, the Engineer argues, his testimony would be unhelpful.

The Engineer is correct that a standard of care can be contractually established. The Florida Administrative Code provides responsibility rules that "are intended to apply as general guidelines where no contractual relationship exists" and "are not intended to take precedence over contractual relationships developed between the parties addressed [in the Code], so long as those contractual relationships do not violate Chapter 471 [of the Florida Statutes] or the stated purpose of [the Code's] responsibility rules."[2] Fla. Admin. Code R. 61G15-30.001. But that does not mean that the parties can agree on a standard of care below that established by the Code. The Code standard is the floor— parties can contractually establish a higher standard of care than that prescribed by the Code, but they cannot establish a lower one. *See Robsol, Inc. v. Garris*, 358 So. 2d 865, 866 (Fla. 3d DCA 1978) ("The law is clear that an architect owes a duty of due care to his client in arranging site plans and drawing buildings which are in conformance with building and zoning codes as well as other similar local ordinances.").

Because Wright's standard-of-care opinion is based on the requirements

---

[2] The purpose of the responsibility rules is "to safeguard the life, health, property and welfare of the public by promoting proper conduct in the practice of engineering and due care and regard for acceptable engineering principles and standards." Fla. Admin. Code R. 61G15-30.001.

of the Code, the Court finds no problem with his methodology.

*Conclusion*

For the reasons explained above, it is **ORDERED** that the Engineer's

*Daubert* motion (Doc. 138) is **DENIED** and that the Engineer's request for oral

argument (Doc. 139) is **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida, on February 2, 2026.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

7